**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| RONALD WEISER and THE MICHIGAN REPUBLICAN PARTY, | ) ) ) | Case No. _____ |
| *Plaintiffs*, | ) ) ) | Before the Hon. _____ |
| v. | ) ) | COMPLAINT FOR DECLARATORY & INJUNCTIVE |
| JOCELYN BENSON, in her official capacity as Secretary of State | ) ) ) | RELIEF |
| *Defendant*. | ) ) ) | |

## COMPLAINT

Mr. Ronald Weiser and the Michigan Republican Party ("Plaintiffs"), by and through their counsel, file this Complaint seeking declaratory and injunctive relief against Defendant Jocelyn Benson, in her official capacity as Secretary of State, and allege as follows:

## INTRODUCTION

1.      Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 to challenge the Michigan Secretary of State's "Recall Exception" to Michigan's campaign contribution limits as constituting a violation of Plaintiffs' First Amendment right of Free Speech and Fourteenth Amendment right to Equal Protection.

2.      In a much-anticipated and hotly-debated gubernatorial race, Governor Gretchen Whitmer's campaign has recently decided to suborn, accept, and retain contributions from her supporters in excess of the legal limits established by the Michigan Campaign Finance Act (the "MCFA"), specifically in MICH. COMP. LAWS § 169.252. To excuse her evasion of Michigan's contribution limits, Governor Whitmer's campaign has attempted to recast the 2022 Michigan gubernatorial race as a recall campaign rather than a reelection campaign. Indeed, faced with a

robust field of viable Republican opposition candidates, Governor Whitmer's campaign pretends that the real question on the ballot is whether she will be recalled, not whether she will be reelected. This disingenuous maneuvering is simply an effort to position her reelection campaign within the narrow and rarely-applied contours of the Recall Exception, through which Governor Whitmer's campaign is circumventing the contribution limits that apply to all the other candidates in the gubernatorial race.

3.     Unfortunately, Governor Whitmer's maneuvering comes at a constitutional price. By allowing the Governor to invoke the Recall Exception to circumvent the contribution limits that apply to all the other candidates, Secretary Benson will violate the Free Speech rights and Equal Protection rights of Republican donors as well as every Michigan Republican voter and candidate. This is a violation that cannot be overlooked and a constitutional price that cannot be paid.

4.     Accordingly, Plaintiffs bring this action to remedy the constitutional violations created by Michigan's Recall Exception and to permanently enjoin the Secretary of State from recognizing or following that Exception and any corresponding interpretive statements or declaratory rulings that impinge upon Michigan citizens' rights to Free Speech and Equal Protection under the laws.

## PARTIES

**PLAINTIFFS**

5.     Plaintiff Ronald Weiser ("Weiser") is a resident of Washtenaw County, Michigan, and is registered and eligible to vote in the State of Michigan. For years, Weiser has supported the Michigan Republican Party ("MRP") generally as an entity, and MRP's candidates individually, in their efforts to win election or appointment to federal, state, and local offices. Weiser has often

contributed the maximum amount permissible under the MCFA to individual Republican candidates for office. Weiser is concerned that the war-chest the Whitmer campaign has filled with illegal excessive contributions accepted under the guise of the Recall Exception will be used by the Whitmer campaign not in a recall election, but in her reelection effort. For that reason, Weiser would immediately and willingly contribute more than $7,150 to multiple Republican candidates for Michigan Governor if such contributions were legally permissible.

6.      Plaintiff MRP is a "major political party" as defined in Section 16 of the Michigan Election Law. *See* MICH. COMP. LAWS § 168.16. MRP is headquartered at 520 Seymour Street, Lansing, Michigan 48912. MRP is organized to promote Republican values and assist candidates who share those values in winning election or appointment to federal, state, and local offices. During the current election cycle, MRP members will participate in fundraising and donation efforts for multiple Republican candidates for Governor, and they wish to continue to do so to the fullest extent allowed by the MCFA. In addition, MRP as an entity will participate in fundraising and donation efforts for the campaign of the Republican nominee opposing Whitmer, and it wishes to continue to do so to the fullest extent allowed by the MCFA. MRP brings this action on behalf of itself and its members.

DEFENDANT

7.      Defendant Jocelyn Benson is Michigan's Secretary of State ("Secretary Benson") and is named in her official capacity. Secretary Benson is Michigan's chief election officer under MICH. COMP. LAWS § 169.215, and therefore has the authority to apply and enforce the provisions of the MCFA that are the subject of this action.

## JURISDICTION & VENUE

8.     Plaintiffs' causes of action arise under the First and Fourteenth Amendments to the United States Constitution, and under federal statute 42 U.S.C. § 1983.

9.     This Court is vested with original subject matter jurisdiction of Plaintiffs' constitutional causes of action in this case pursuant to 28 U.S.C. §§ 1331 & 1343.

10.     This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391 because (a) all or a substantial part of the events or omissions giving rise to Plaintiffs' causes of action occurred within the Western District of Michigan, and (b) Defendant's primary office is located in Ingham County, which is within the Western District of Michigan.

11.     This Court is authorized to consider Plaintiffs' claims for declaratory relief pursuant to 28 U.S.C. §§ 2201 & 2202, FED. R. CIV. P. 57, and the general legal and equitable powers of this Court.

## FACTUAL ALLEGATIONS

### THE NATURE OF MICHIGAN'S 2022 GUBERNATORIAL RACE

12.     Michigan is currently preparing for its next general gubernatorial election on November 8, 2022. Candidates are fundraising and campaigning to garner support for their candidacy and the political views they represent. In particular, the Michigan gubernatorial race has pitted Michigan's incumbent Governor Gretchen Whitmer, a Democrat, against a broad field of potential Republican challengers.

13.     As the gubernatorial race has gained momentum, candidates on all sides have redoubled their efforts to raise funds and support for their campaigns. Not surprisingly, Plaintiff MRP has made every effort to garner support for its candidates and to amplify their policy and

political messages to the greatest extent possible. MRP's efforts as an organization have been seconded by the individual efforts and contributions of its members, including Plaintiff Weiser.

14.     Plaintiffs are concerned by the over $6 million war-chest the Whitmer campaign has built through its acceptance of millions of dollars of contributions in amounts greatly exceeding the $7,150 contribution limit found in Michigan law. Plaintiff Weiser and many other Republican donors would personally contribute more than $7,150 to Republican gubernatorial candidates if such contributions were legally permissible.

15.     By contrast, in July 2021, Governor Whitmer's campaign filed a quarterly report detailing the contributions that it received in that reporting period. The report indicated that Governor Whitmer's campaign received contributions in excess of $7,150 from 119 individual donors, in a combined amount of approximately $3.4 million. Such contributions exceed the legal limit established in the MCFA, which caps individual contributions to campaigns for statewide elected officials at $7,150 per person. *See* MICH. COMP. LAWS § 169.252(1)(a).

16.     To justify its brazen flaunting of the MCFA, Governor Whitmer's campaign has invoked the Recall Exception, asserting that, because she is technically the target of some (albeit lackluster) recall committees, her reelection campaign is actually a campaign against her recall and therefore not subject to Michigan's campaign contribution limits.

THE "RECALL EXCEPTION" TO THE MCFA'S CONTRIBUTION LIMITS

17.     The Recall Exception was originally formulated in an interpretive statement issued by the Michigan Secretary of State in response to the Honorable William Faust on October 7, 1983. *See* **Exhibit A**. The Exception was later administratively promulgated in a declaratory ruling issued by the Michigan Secretary of State in response to L. Brooks Patterson on January 3, 1984. *See* **Exhibit B**.

18.     As stated in the Patterson Declaratory Ruling, the Recall Exception declared that the contribution restrictions in the MCFA "cannot be construed as applying to contributions received by the candidate committee of a state elective officeholder facing a recall election." Ex. B at 2. The Secretary's reasoning behind the rule was that an officeholder fighting an active recall campaign should be able to accept contributions to the same level allowed for a political committee seeking recall of the officeholder. In other words, the Secretary reasoned that because recalls are pursued through political committees that are not subject to the contribution limits of MICH. COMP. LAWS § 169.252, an officeholder facing an active recall election should not be subject to such limits either.

19.     While the Secretary of State adopted this rule almost three decades ago, the Secretary has not applied the Recall Exception in the context of a gubernatorial campaign. There is no case law in Michigan courts that defines the limits, nuances, or contours of the rule. It is an administrative rule that has never been tested for its constitutional integrity.

20.     This is the rule that Governor Whitmer's defenders have invoked to justify her decision to ignore the otherwise clear contribution limits under the MCFA.

**THE STATUS OF THE CURRENT CONTROVERSY WITH GOVERNOR WHITMER'S CAMPAIGN**

21.     In response to this alarming development, on August 10, 2021, the Michigan Freedom Fund filed an official complaint with the Office of the Michigan Secretary of State pursuant to MICH. COMP. LAWS § 169.215(5)–(6), alleging that Governor Whitmer's campaign is in violation of the MCFA. *See* **Exhibit C**.

22.     As detailed in Section 169.215(5), within 5 days following the Michigan Freedom Fund's submission of its complaint, a copy of the complaint must have been sent to Governor Whitmer's campaign. Within 15 days following receipt of that complaint (or 30 days for good

cause shown), the Whitmer campaign had the opportunity to respond to the allegations of the complaint, and Secretary Benson was required to provide a copy of any such response to the Michigan Freedom Fund. If such a response was made, the Michigan Freedom Fund as the complainant is allowed time to file a rebuttal. Otherwise, the Secretary's Office is required to post its decision on the matter on its official website.

23.     Since August 10, 2021, Governor Whitmer's campaign has been allowed to keep the excessive contributions raised and Secretary Benson's Office has not forced disgorgement or otherwise offered an indication of its decision as to the complaint. The Secretary's refusal to make a timely decision, however, actually constitutes a decision. Plaintiffs are harmed every minute that Whitmer is allowed to keep and potentially spend these funds. The tacit position of the Secretary's Office indicates, in effect, that Secretary Benson accepts the Whitmer campaign's justification for exceeding the contribution limits and endorses the application of the Recall Exception in these circumstances.

24.     The procedural provisions of the MCFA add weight to Secretary Benson's decision not to find a violation and pursue a proper resolution. According to MICH. COMP. LAWS § 169.215(17), "there is no private right of action, either in law or in equity, under this act." For every Michigan voter, "the remedies provided in [the MCFA] are the exclusive means by which this act may be enforced and by which any harm resulting from a violation of this act may be redressed." Furthermore, the criminal provisions and penalties of the act "may only be enforced by the attorney general and only upon referral by the secretary of state." Simply stated, when Secretary Benson allows Governor Whitmer's campaign to invoke the Recall Exception as a pretext to ignore the contribution limits found in Michigan law, there is no cause of action under the MCFA by which Michigan voters can seek redress.

25.     Thus, by applying the Recall Exception and failing to enforce the MCFA in a constitutional manner, Secretary Benson leaves every Republican gubernatorial candidate—and the donors who wish to express their political speech by supporting them—at a distinct disadvantage. Secretary Benson's decision prevents individual Michigan Republican voters from supporting their candidates to the same level and extent as that enjoyed by their Democrat counterparts who have supported Governor Whitmer with contributions far in excess of the contribution limits under the MCFA. Furthermore, it leaves these voters without any administrative or state remedies for these violations of their constitutional rights.

26.     Given the unconstitutionality of the Recall Exception, Secretary Benson's refusal to reject the application of the Recall Exception to Governor Whitmer's campaign, and the immediate harm that has and will continue to result from Governor Whitmer's invocation of the Recall Exception, Plaintiffs file this action to assert their rights of Free Speech and Equal Protection under the First and Fourteenth Amendments.

## CAUSES OF ACTION

**COUNT I:    THE MICHIGAN SECRETARY OF STATE'S RECALL EXCEPTION VIOLATES PLAINTIFFS' FIRST AMENDMENT RIGHT TO FREEDOM OF SPEECH ON ITS FACE.**

27.     Plaintiffs incorporate by reference the above paragraphs as if fully set forth herein.

28.     The First Amendment of the United States Constitution guarantees that "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST. AMEND. 1. This guarantee has been extended through 42 U.S.C. § 1983 to protect all citizens of the United States against anyone who seek to abridge this constitutional right "under color of any statute, ordinance, regulation, custom, or usage." The Recall Exception is a rule adopted by the Michigan Secretary of State that violates Freedom of Speech on its face.

8

29.     In essence, the Recall Exception allows an incumbent candidate's supporters to enjoy an unlimited level of political speech without any contribution restrictions, while any challenging candidate's supporters must limit their political speech to the levels permitted by Michigan's campaign contribution caps.

30.     The Recall Exception constitutes a substantial burden on the free speech rights of any incumbent-challenging candidate by limiting their ability to "mount[] effective campaigns against incumbent officeholders, thereby reducing democratic accountability." *Randall v. Sorrell*, 548 U.S. 230, 248–49 (2006).

31.     Moreover, the Recall Exception inevitably guts the political significance of a "recall" in two ways. First, the rule renders the recall process a sham by incentivizing incumbents to establish faux recall petitions against themselves. If the mere existence of a recall petition against an incumbent is sufficient to exempt them from all campaign contribution limits, then every incumbent will be tempted to instigate the existence of a recall petition against themselves in order to claim the Exception. Second, the rule creates a chilling effect on future political speech and activity. To that end, if pursuing the recall of an incumbent suddenly allows the incumbent to accept unlimited contributions otherwise barred by the MCFA, the voters who oppose the activities and policies of that incumbent will be deterred from expressing their political opinions through a recall petition for fear of destroying the campaign viability of their preferred candidates. In either case, the Recall Exception subverts the political process and distorts the essential power and effect of free political speech.

32.     Because of the burden imposed by the Recall Exception, this rule will only pass constitutional muster if it is narrowly tailored to meet a compelling state interest. *See id.* at 249. The only explicit state interest cited by the Michigan Secretary of State in the Patterson Declaratory

Ruling is the concern to ensure that contributors on all sides of a political campaign are subject to the same contribution limits. Far from being narrowly tailored to protect this interest, the Recall Exception creates situations where *it harms the very interest that it purports to protect* by allowing incumbents to raise unlimited contributions while their challengers are bound by the limits of MICH. COMP. LAWS § 169.252.

33.     The Supreme Court has "never upheld the constitutionality of a law that imposes different contribution limits for candidates who are competing against each other, and [such a] scheme impermissibly burdens [the contribution-limited candidate's] First Amendment right." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 738 (2008). The Recall Exception is a scheme that does exactly that: it imposes different contribution limits for candidates competing against each other. And thus, it is an impermissible burden and facially unconstitutional.

**COUNT II:   THE   MICHIGAN   SECRETARY   OF   STATE'S   RECALL EXCEPTION   VIOLATES   PLAINTIFFS'   FIRST   AMENDMENT RIGHT TO FREEDOM OF SPEECH AS APPLIED IN THIS CASE.**

34.     Plaintiffs incorporate by reference the above paragraphs as if fully set forth herein.

35.     The First Amendment of the United States Constitution guarantees that "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST. AMEND. 1. This guarantee has been extended through 42 U.S.C. § 1983 to protect all citizens of the United States against anyone who seek to abridge this constitutional right "under color of any statute, ordinance, regulation, custom, or usage." The Recall Exception is a rule adopted by the Michigan Secretary of State that violates the Plaintiffs' Freedom of Speech as applied to them in the circumstances underlying this action.

36.     Applying the Recall Exception in the current gubernatorial race leads to the absurd result of the Democrat-incumbent candidate being allowed to raise unlimited contributions while all of her Republican-opposition candidates are only allowed to raise contributions under the limits

of the MCFA. In other words, Democrat-Party principles and values may be supported with a blank check, while Republican-Party principles and values are capped at $7,150 per person. This is the quintessence of viewpoint discrimination. It is an attempt to dictate a political outcome in the Democrats' favor by skewing the Republican candidates' ability to fund their political fight.

37.     The injurious impact of this rule is not hypothetical; the facts are already a matter of public record. Citing the Recall Exception, Governor Whitmer's campaign has raised at least $3.4 million in campaign contributions from 119 donors, each giving more than $7,150 to her campaign—that is nearly 4 times the amount that any Republican candidate has been allowed to accept from an equivalent number of donors. Under the limits of the MCFA, it would take more than 475 donors to raise the same amount for any of Whitmer's challengers. This is an egregious burden on all Michigan Republicans' right of Free Speech, and there has not been even a pretense of compelling state interest provided to support the application of the Recall Exception in the current circumstances.

38.     When the Recall Exception was originally adopted in the Patterson Declaratory Ruling, the then-serving Secretary of State declared that "[t]he Secretary of State has an obligation to administer [the MCFA] in a constitutional fashion and to implement the statute so as to avoid absurd results." *See* Ex. B at 3. Applying the Recall Exception in this case leads to an absurd result and is blatantly inconsistent with the Secretary of State's obligation to administer the law in a constitutional manner.

**COUNT III:  THE   MICHIGAN   SECRETARY   OF   STATE'S   RECALL EXCEPTION   VIOLATES   PLAINTIFFS'   FOURTEENTH AMENDMENT RIGHT TO EQUAL PROTECTION OF THE LAWS ON ITS FACE.**

39.     Plaintiffs incorporate by reference the above paragraphs as if fully set forth herein.

11

40.     The Fourteenth Amendment to the United States Constitution guarantees that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. 14, Sec. 1. This guarantee has been extended through 42 U.S.C. § 1983 to protect all citizens of the United States against anyone who seek to deny this constitutional right "under color of any statute, ordinance, regulation, custom, or usage." On its face, the Recall Exception violates Plaintiffs' Equal Protection rights by creating a loophole that allows an incumbent candidate facing a recall to enjoy greater privileges under the MCFA than any opposition candidate.

41.     The Recall Exception was originally intended to create an even-handed standard that would subject those seeking a recall and those opposing recall to the same contribution restrictions. In fact, the Secretary of State recognized that imposing different standards on candidates competing in the same election "would subject the [MCFA] to a challenge on constitutional grounds." *See* Ex. B at 3. This is fundamental to the concept of *equal* protection under the law: parties in the same circumstances are accorded the same legal protections and privileges. And yet, ironically, the Recall Exception creates the very inequity that it was ostensibly intended to remedy.

42.     The Supreme Court has upheld various limitations placed on individual political contributions as consistent with the compelling state interest of preventing corruption and manipulation of the electoral system. *See Nixon v. Shrink Missouri Gov't PAC*, 528 U.S. 377, 388 (2000) (applying *Buckley v. Valeo* to contribution limits on state-office elections and holding that "the prevention of corruption and the appearance of corruption was found to be a constitutionally sufficient justification" of such limits). On the contrary, the Supreme Court has "consistently rejected" campaign finance restrictions that attempt to "'level the playing field,' or to 'level

electoral opportunities,' or to 'equalize the financial resources of candidates.'" *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 207 (2014). Thus, a constitutionally sound campaign finance system will seek to deter corruption without creating unequal impacts or causing disparate treatment among the affected candidates.

43.     The Recall Exception turns the Supreme Court's guidance on its head. Rather than impose equal contribution limits on all candidates to protect the compelling state interest of preventing corruption, the Recall Exception imposes selective limits on some candidates to allow candidates facing recall special privileges in raising support for their campaigns. This rule restricts one class of candidates for the purposes of securing a compelling state interest, and it unleashes another class of candidates for the purposes of promoting an illegitimate state interest.

44.     Thus, on its face, the Recall Exception violates Plaintiffs' Equal Protection rights and creates disparate standards for candidates campaigning in the same race. This is unconstitutional.

**COUNT IV:  THE MICHIGAN SECRETARY OF STATE'S RECALL EXCEPTION VIOLATES PLAINTIFFS' FOURTEENTH AMENDMENT RIGHT TO EQUAL PROTECTION OF THE LAWS AS APPLIED IN THIS CASE.**

45.     Plaintiffs incorporate by reference the above paragraphs as if fully set forth herein.

46.     The Fourteenth Amendment to the United States Constitution guarantees that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. 14, Sec. 1. This guarantee has been extended through 42 U.S.C. § 1983 to protect all citizens of the United States against anyone who seek to deny this constitutional right "under color of any statute, ordinance, regulation, custom, or usage." As applied in this case, the Recall Exception violates Plaintiffs' Equal Protection rights by allowing Governor Whitmer to accept

contributions and raise political funds that could potentially result in criminal prosecution if accepted or raised by any of her Republican challengers.

47.     The Equal Protection problems with the Recall Exception are especially evident when it is applied, as here, in the midst of a general election for statewide office, rather than strictly in relation to a vote on a particular recall petition that does not coincide with a general election. If Governor Whitmer were merely facing a recall election in which she was actively opposed by a political committee, then the application of the Recall Exception might not result in an unequal impact among candidates. After all, the political committee she would be facing in that scenario would also be free from contribution restrictions under the MCFA. *See* Ex. B at 1–2. But that is not the case here. Governor Whitmer is facing a broad field of individual candidates who are seeking to fill the same office for which she seeks reelection, and each of these candidates and their supporters are subject to the contribution limits of the MCFA. Thus, applying the Recall Exception in this election creates an unequal legal impact in Governor Whitmer's favor rather than ensuring an equal legal impact for her protection. And in so doing, the Recall Exception violates Plaintiffs' Equal Protection rights.

**COUNT V:    PLAINTIFFS ARE ENTITLED TO TEMPORARY INJUNCTIVE RELIEF FROM THE MICHIGAN SECRETARY OF STATE'S APPLICATION OF THE RECALL EXCEPTION.**

48.     Plaintiffs incorporate by reference the above paragraphs as if fully set forth herein.

49.     For Plaintiffs to demonstrate they are entitled to temporary injunctive relief, they must satisfy three elements: (1) a likelihood of success on the merits of their underlying constitutional claims, (2) a likelihood that Plaintiffs will suffer irreparable harm in the absence of preliminary relief, and (3) a balance of equities and public interests in Plaintiffs' favor. *See Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 66 (2020) (citing *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)).

50.     Plaintiffs are likely to succeed on the merits of their constitutional claims because of the nature of the rights involved, the severity of the burden placed upon their rights by the Recall Exception, and the failure of the Secretary of State to provide any evidence of compelling state interests in support of the adoption and application of the Recall Exception.

51.     Plaintiffs are already experiencing ongoing irreparable harm from Secretary Benson's refusal to protect their constitutional rights. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The war-chest Governor Whitmer has built through unlimited campaign contributions accepted under pretense of the Recall Exception has immediately and irreparably impacted Plaintiffs' rights of Free Speech and Equal Protection. Plaintiffs' voices are being drown out by the financial megaphone given to Governor Whitmer's campaign by virtue of the Recall Exception, and Plaintiffs' efforts to present their own political positions are being stymied by unequal treatment under the law.

52.     Finally, the balance of equities and the public interests weigh unmistakably in the Plaintiffs' favor. Plaintiffs' entire case is an effort to ensure an equitable application of the MCFA to all parties involved in the gubernatorial race. The only legitimate state interests at play in this case are those that support the imposition of contribution limits to prevent corruption, not those that support an unequal application of contribution limits to even the playing field for a candidate who faces a recall petition coincident with the general election. These considerations weigh heavily in favor of Plaintiffs' request for this Court to maintain the status quo of applying the MCFA's contribution limits to all candidates equally for the duration of this case and the gubernatorial race.

53.     Because Plaintiffs satisfy all three elements of the applicable test, they are entitled to temporary injunctive relief in this action.

## PRAYER

WHEREFORE, Plaintiffs request this Court to grant Plaintiffs' prayer for temporary injunctive relief and enter an order restraining Secretary Benson's application of the Recall Exception pending a final decision of this action.

Plaintiffs also request this Court to order a speedy hearing of this declaratory-judgment action pursuant to Fed. R. Civ. P. 57.

Upon completion of such hearing, Plaintiffs request this Court to enter judgment in their favor and award the following declaratory and injunctive relief:

(a)     a declaratory judgment that the Recall Exception violates Plaintiffs' rights under the First Amendment of the United States Constitution;

(b)     a declaratory judgment that the Recall Exception violates Plaintiffs' rights under the Fourteenth Amendment of the United States Constitution;

(c)     a permanent injunction that prohibits the Michigan Secretary of State from applying or implementing the Recall Exception in the upcoming gubernatorial election;

(d)     an award of all Plaintiffs' reasonable attorney's fees, costs, and expenses; and

(e)     any other relief to which Plaintiffs may be entitled at law or in equity.

Dated: September 20, 2021                    Respectfully submitted,

                                             **DICKINSON WRIGHT PLLC**

                                             By: */s/ Charles R. Spies*
                                             Charles R. Spies
                                             Michigan Bar No. P83260
                                             Robert L. Avers
                                             Michigan Bar No. P75396
                                             Adam T. Walton

*Pro Hac Vice Forthcoming*
123 W. Allegan Street
Lansing, Michigan 48933
Tel: (517) 371-1730
Fax: (844) 670-6009
cspies@dickinsonwright.com
ravers@dickinsonwright.com
awalton@dickinsonwright.com

**INHULSEN LAW PLC**

John Inhulsen
Michigan Bar No. P69137
3351 Claystone Street SE, Suite 104
Grand Rapids, Michigan 49546
Tel: (616) 747-0000
john@inhulsenlaw.com

**ATTORNEYS FOR PLAINTIFFS**