UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD WEISER, et al.,

    Plaintiffs,

v.

                                            Case No. 1:21-cv-816

JOCELYN BENSON, *in her official capacity as Secretary of State*,        HON. JANET T. NEFF

    Defendant,

and

WHITMER FOR GOVERNOR,

    Intervenor.
_____/

## OPINION AND ORDER

On September 20, 2021, Plaintiffs Ronald Weiser[1] and the Michigan Republican Party filed a Complaint in this Court seeking declaratory and injunctive relief against Defendant Secretary of State Jocelyn Benson[2] (ECF No. 1). After the Court granted Whitmer for Governor's motion to intervene in this action (ECF No. 27), on November 18, 2021, Plaintiffs submitted an emergency motion for a temporary restraining order, requesting that the Court freeze all funds Governor Whitmer received as part of a recall effort (Memorandum in Support, ECF No. 34-1 at PageID.155; Proposed Order, ECF No. 34-2 at PageID.171). At the hearing on the motion for the temporary restraining order, Intervenor-Whitmer for Governor requested that the Court dismiss the suit in its

---

[1] Plaintiff Ronald Weiser is identified in the Complaint as a concerned supporter of and contributor to the Michigan Republican Party (Compl. ¶ 5, ECF No. 1 at PageID.2-3).
[2] Secretary of State Benson is the only Defendant named in the Complaint (ECF No. 1).

entirety because Plaintiffs lack standing to bring this action (Hearing Transcript, ECF No. 45 at PageID.411-412). The Court subsequently denied the motion for the temporary restraining order and requested that the parties brief the issue of standing (Order, ECF No. 44). Having considered the parties' submissions on standing (ECF Nos. 46-48), the Court concludes that oral argument is unnecessary to resolve the issues presented. *See* W.D. Mich. LCivR 7.2(d). For the reasons that follow, the Court dismisses this action for lack of standing.

## I.    BACKGROUND

This is an election law case, allegedly about asymmetrical campaign contribution limits under Michigan law. The context for this suit is the "next general gubernatorial election on November 8, 2022" (Compl. ¶ 12, ECF No. 1 at PageID.4). The Michigan Republican Party has not yet selected a candidate for the gubernatorial election (Cordes Declaration ¶ 23, ECF No. 48-1 at PageID.480). Candidates are currently "fundraising and campaigning to garner support for their candidacy," including "Michigan's incumbent Governor Gretchen Whitmer, a Democrat, against a broad field of potential Republican challengers" (Compl. ¶ 12, ECF No. 1 at PageID.4). The Complaint recites that

> [i]n a much-anticipated and hotly-debated gubernatorial race, Governor Gretchen Whitmer's campaign has recently decided to suborn, accept, and retain contributions from her supporters in excess of the legal limits established by the Michigan Campaign Finance Act (the "MCFA"), specifically in MICH. COMP. LAWS § 169.252. To excuse her evasion of Michigan's contribution limits, Governor Whitmer's campaign has attempted to recast the 2022 Michigan gubernatorial race as a recall campaign rather than a reelection campaign.

(*id.* ¶ 2 at PageID.1). The Complaint refers to a quarterly report filed in July 2021 in which Governor Whitmer reported that she received contributions from 119 individuals totaling $3.4 million (*id.* ¶ 15 at PageID.5).

Plaintiffs allege that these individual contributions received by Governor Whitmer exceed the legal limit under the Michigan Campaign Finance Act ("MCFA"), MICH. COMP. LAWS § 169.252(1)(a), "which caps individual contributions to campaigns for statewide elected officials" (*id.*). MICH. COMP. LAWS. § 169.252(1)(a) provides as to individual contributions to candidates for a state elective office that

> a person other than an independent committee or a political party committee shall not make contributions to a candidate committee of a candidate for elective office that, with respect to an election cycle, are more than the following:
>
> (a) $6,800.00 for a candidate for state elective office other than the office of state legislator, or for a candidate for local elective office if the district from which he or she is seeking office has a population of more than 250,000.

MICH. COMP. LAWS § 169.252(1)(a). According to Plaintiffs, the individual contribution limit has been raised to $7,150 for the current election cycle (Cordes Declaration ¶ 2, ECF No. 48-1 at PageID.477, citing MICH. COMP. LAWS § 169.246; Compl. ¶ 14, ECF No. 1 at PageID.5).

Plaintiffs allege that Governor Whitmer raised large individual contributions in response to recall efforts from recall committees (*id.* ¶ 16 at PageID.5). Plaintiffs further allege that the Governor is the subject of recall petitions (*id.*) and recall petitions may be filed against Governor Whitmer until January 1, 2022. MICH. CONST. 1963, Art. V, § 21; MICH. COMP. LAWS §§ 168.63, 168.951. If a recall petition succeeds in receiving sufficient support, a recall election can be called. MICH. COMP. LAWS §§ 168.955, 168.963. The recall committees are not a party to this litigation or named in this litigation (Complaint, ECF No. 1).

This lawsuit concerns the recall fundraising, which Plaintiffs state amounts to unequal political fundraising (ECF No. 48 at PageID.461). Plaintiffs elaborate that a recall exception to MCFA was administratively promulgated by then Michigan Secretary of State Richard H. Austin on January 3, 1984 (*id.* ¶¶ 17-18 at PageID.5-6; Declaratory Ruling to L. Brooks Patterson, ECF

No. 1-2 at PageID.24). Plaintiffs allege that the ruling by Secretary of State Austin declared that the contribution limits in MICH. COMP. LAWS § 169.252(1)(a) "cannot be construed as applying to contributions received by the candidate committee of a state elective officeholder facing a recall election" (*id.* ¶¶ 17-18 at PageID.5-6; ECF No. 1-2 at PageID.24).

The declaratory ruling, which Plaintiffs attach to their Complaint, is specific as to the nature of a recall under Michigan law. A recall election is a separate, special election: "a recall vote is an election," "committees which participate in recall elections are required to meet all the registration and disclosure requirements of the Act" (ECF No. 1-2 at PageID.24). Recall elections, however, are "elections," for which individual contribution limits do not apply under the MCFA: "It is not inconsistent to conclude that even though a recall vote is an election that the provisions of section 52 are not applicable since the officeholder who is the subject of the recall vote is not a 'candidate for state elective office' which is a prerequisite to the application of the contribution limits set forth in section 52" (*id.*). Under this recall election scheme, therefore, individual contribution limits do not apply; individual contributions are unlimited and apply across the board to both supporters and opponents of the recall election.

Plaintiffs allege that this recall exception can be used and is being used to create a competitive advantage for the incumbent Governor's reelection. Plaintiffs further claim that Governor Whitmer's campaign has amassed individual contributions above the MCFA limits under the guise of the so-called "recall exception," and regardless of whether these funds will be used for the reelection campaign, Plaintiffs are still injured (Compl. ¶¶ 5, 20, ECF No. 1 at PageID.6). Even if the funds are not explicitly committed to the reelection campaign, Plaintiffs allege that Governor Whitmer's future gubernatorial opponent has already been harmed by the Governor's show of fundraising strength (ECF No. 48 at PageID.461).

4

Plaintiffs further underline the point: "[a]lthough a recall campaign is, as a purely formal matter, distinct from a reelection campaign, there is no realistic way to differentiate the two;" "money raised, and money spent, trying to persuade Michigan that Governor Whitmer should remain its governor applies equally to her efforts to avoid a recall and her efforts to secure reelection" (ECF No. 48 at PageID.463, 466).

Plaintiffs bring this suit against Secretary of State Benson as the "chief election officer under MICH. COMP. LAWS § 169.215" to enforce the MCFA and enjoin the use of the recall exception (Compl. ¶ 7, ECF No. 1 at PageID.3). The Complaint challenges the constitutionality of the 1983 declaratory ruling on recall fundraising (*id.* ¶¶ 25-26 at PageID.8) and alleges five counts under the First and Fourteenth Amendments and 42 U.S.C. § 1983 against the Secretary of State:

I. The Michigan Secretary of State's Recall Exception Violates Plaintiffs' First Amendment Right to Freedom of Speech on Its Face
II. The Michigan Secretary of State's Recall Exception Violates Plaintiffs' First Amendment Right to Freedom of Speech as Applied in this Case
III. The Michigan Secretary of State's Recall Exception Violates Plaintiffs' Fourteenth Amendment Right to Equal Protection of the Laws on its Face
IV. The Michigan Secretary of State's Recall Exception Violates Plaintiffs' Fourteenth Amendment Right to Equal Protection of the Laws as Applied in this Case
V. Plaintiffs are Entitled to Temporary Injunctive Relief from the Michigan Secretary of State's Application of the Recall Exception

(*id.* at PageID.8-16). The Complaint does not challenge the contribution limits under MICH. COMP. LAWS § 169.252; it challenges only the recall rule.

After Whitmer for Governor's motion to intervene in this action was granted (Order, ECF No. 27), Plaintiffs filed a motion for a temporary restraining order against Whitmer for Governor, requesting that the Court enjoin Whitmer for Governor from transferring the recall funds to the Michigan Democratic Party or any other organization (ECF No. 34-1 at PageID.152).

5

The Court held a hearing on the motion on December 1, 2021 (Hearing Transcript, ECF No. 45). At the hearing, the Court confirmed with Plaintiffs that Governor Whitmer is facing recall efforts from recall committees (*id.* at PageID.392). The Court also inquired of Plaintiffs as to the nature of the alleged constitutional injury (*id.* at PageID.399). Plaintiffs responded:

> the constitutional claim, I think, boils down to this: One particular kind of competitor in the 2022 election, a candidate, can raise unlimited money and then transfer that money to her allies at the conclusion of the recall proceedings, and another class of candidates, namely, you know, Republican candidates for governor, are subjected to the $7,150 limit. They cannot raise unlimited funds, and they cannot transfer those unlimited funds to their allies.

(*id.* at PageID.399).

The Court denied the motion for a temporary restraining order and requested briefing from the parties on the issue of Plaintiffs' standing to bring this action (Order, ECF No. 44). The Court received the parties' briefs on December 15, 2021: "Intervening Defendant Whitmer for Governor's Briefing on the Issue of Standing Requested by the Court" (ECF No. 46); "Defendant Secretary of State Jocelyn Benson's Court-Requested Brief on Plaintiffs' Standing" (ECF No. 47); and "Plaintiffs' Supplemental Memorandum Regarding Article III Standing" (ECF No. 48). The Court has reviewed the briefs and will dismiss this action for lack of standing and subject matter jurisdiction.

## II. ANALYSIS

### A. Legal Standard

Article III, § 1, of the Constitution limits the jurisdiction of federal courts to hear only actual cases and controversies. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016), *as revised* (May 24, 2016); *see Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017). "For there to be such a case or controversy, it is not enough that the party invoking the power of the court have a keen interest in

the issue. That party must also have 'standing.'" *Hollingsworth v. Perry*, 570 U.S. 693, 700, (2013).  Standing is an issue of the court's subject matter jurisdiction.  *Levy*, 854 F.3d at 857.

To satisfy standing Plaintiffs bear the burden of establishing that (1) they have suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent rather than conjectural or hypothetical; (2) there is a causal connection between the injury and Defendant's alleged wrongdoing; and (3) the injury can likely be redressed. *Levy*, 854 F.3d at 857 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element."  *Spokeo*, 578 U.S. at 338 (citation omitted).  Further, "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (internal quotations and citations omitted).

The Court's inquiry, here, turns on whether Plaintiffs Weiser, an individual, and the Michigan Republican Party, an organization, have demonstrated an injury in fact to support standing.  *See Chapman v. Tristar Prod., Inc.*, 940 F.3d 299, 304 (6th Cir. 2019); *Barry v. Lyon*, 834 F.3d 706, 716 (6th Cir. 2016).

**B. Discussion**

Injury in fact is the first and foremost of standing's three elements.  *Spokeo*, 578 U.S. at 338.  Plaintiffs appear to allege that an injury exists to them because whoever is selected as the Republican Party's gubernatorial candidate in 2022 "will suffer from a disadvantage, in violation of the First and Fourteen Amendments" as a result of Governor Whitmer's "show of fundraising

7

strength" (ECF No. 48 at PageID.461, 472).[3]  While Plaintiffs appear to allege a harm on behalf of a hypothetical gubernatorial candidate, they also allege that they are harmed because Plaintiff Weiser and apparently all similarly situated members of the Republican Party are not able to make individual contributions to the future gubernatorial candidate in the same way that Governor Whitmer has received individual contributions to fight her recall (Compl. ¶ 5, ECF No. 1 at PageID.3; ECF No. 48 at PageID.460, 471).

Plaintiffs' lead case is *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 737-39 (2008), which recognized a constitutional injury based on discriminatory fundraising limitations in the competitive context of electoral politics, but also recognized that there is no constitutional basis for attacking contribution limits that are too high or elevated and applied across the board.  *Id.*

In a recall election context, by definition, there can be only one recalled candidate. Plaintiffs concede that a recall committee can raise unlimited individual contributions the same as a recalled candidate committee under the interpretative statement to recall elections or the Michigan recall election rule (Hearing Transcript, ECF No. 45 at PageID.395).  Therefore, the Court focuses its inquiry on whether Plaintiffs' alleged injury related to the recall is concrete and particularized and actual and imminent.

---

[3]  Many of Plaintiffs' allegations are contradictory or speculative, e.g.: "Moreover, the Recall Exception inevitably guts the political significance of a 'recall' in two ways.  First, the rule renders the recall process a sham by incentivizing incumbents to establish faux recall petitions against themselves.  If the mere existence of a recall petition against an incumbent is sufficient to exempt them from all campaign contribution limits, then every incumbent will be tempted to instigate the existence of a recall petition against themselves in order to claim the Exception.  Second, the rule creates a chilling effect on future political speech and activity. To that end, if pursuing the recall of an incumbent suddenly allows the incumbent to accept unlimited contributions otherwise barred by the MCFA, the voters who oppose the activities and policies of that incumbent will be deterred from expressing their political opinions through a recall petition for fear of destroying the campaign viability of their preferred candidates.  In either case, the Recall Exception subverts the political process and distorts the essential power and effect of free political speech" (Compl. ¶ 31, ECF No. 1 at PageID.9).

*Concrete and Particularized*

For an injury to be "concrete," "it must actually exist;" a sufficiently "particularized," injury "affects the plaintiff in a personal and individual way." *See Spokeo*, 578 U.S. at 339; *see also Allen v. Whitmer*, No. 21-1019, 2021 WL 3140318, at *3 (6th Cir. July 26, 2021). Plaintiffs argue that the "recall exception" "imposes asymmetrical contribution limits on candidates running for the same office" because the recall and reelection campaigns are occurring at the same time (ECF No. 48 at PageID.463, 468). Plaintiff Weiser and each member of the Michigan Republican Party are harmed, they allege, because they cannot express their disagreement with Governor Whitmer in the same way that supporters of Governor Whitmer can express themselves (*id.* at PageID.468, 470). Defendant Benson states that this is not true because Plaintiffs could express themselves by contributing unlimited amounts to recall committees opposing the Governor; and the Governor is only permitted to collect contributions in excess of the MCFA limits for the purpose of opposing a recall effort (ECF No. 47 at 452, 456). Intervenor-Whitmer for Governor adds that the alleged injury is a "generalized grievance" "common to all members of the public" (ECF No. 46 at PageID.433).

The Court finds that Plaintiffs have failed to allege a concrete and particularized injury. Generally, "standing is found based on First Amendment violations where the rule, policy or law in question has explicitly prohibited or proscribed conduct on the part of the plaintiff." *Parsons v. U.S. Dep't of Just.*, 801 F.3d 701, 711 (6th Cir. 2015). Plaintiffs' Complaint is based not on a restriction—individual campaign limitations under MICH. COMP. LAWS § 169.252—but rather based on elevated or unlimited contribution limits applied across the board to detractors and supporters in recall campaigns. *Davis*, 554 U.S. at 737 (for the proposition that there is no basis

9

for challenging elevated contribution limits that apply across the board). Plaintiffs have, thus, failed to show a direct injury.

Their alleged injury also sounds as a generalized grievance. Plaintiffs appear to complain that the Michigan Government should make the recall individual contribution limits more in harmony with the contribution limits for elections for a public office. This grievance is clearly not a grievance particularized to Plaintiffs but a generalized grievance. *See Lance v. Coffman*, 549 U.S. 437, 440, (2007) (*per curiam*) (for the proposition that a plaintiff is not entitled to institute a suit in federal court to assert a right possessed by every citizen, allegedly requiring the government to be administered according to the law). A generalized grievance is insufficient to confer standing. *Hollingsworth*, 570 U.S. at 706-07 (Article III standing is not a vehicle for the vindication of value interests by concerned bystanders). "A litigant 'raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy.'" *Id.* at 706 (quoting *Defs. of Wildlife*, 504 U.S. at 573-74).

Because there is no alleged demonstrable threat or actual injury from putative illegal action, the Complaint shall be dismissed. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 617 (1973). Plaintiffs have failed to allege a concrete and particularized injury for the purpose of invoking the Court's jurisdiction to decide an actual case and controversy.

*Actual and Imminent*

Additionally, the Court finds that the alleged injury is not actual and imminent. "A party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct." *Davis*, 554 U.S. at 734 (citing *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). Plaintiffs

maintain that Governor Whitmer's fundraising momentum "increase[s] her chances against her Republican challenger" in the General Election in November 2022, and unless remedied, the "Michigan Republican Party must compete at a disadvantage" (ECF No. 48 at PageID.471-473). The problem with this claim, according to Defendant Benson and Intervenor-Whitmer for Governor, is that the claim is predicated entirely on the rights and interests of the yet-to-be named 2022 Republican gubernatorial candidate, a candidate only to be named after the August 2022 primary election (ECF No. 46 at PageID.435; ECF No. 47 at PageID.452). Regardless of this fact, Plaintiffs further allege that given that no recall campaign has raised any funds so far, it stands to reason that Governor Whitmer has spent or will spend money in ways that benefit her reelection campaign (ECF No. 48 at PageID.471).[4]

The Court finds that the problem with Plaintiffs' alleged injury is less that the future harm is speculative or uncertain and more that the alleged harm is self-inflicted. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013); *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 865 (6th Cir. 2020) (for the proposition that the asserted injury must be the consequence of defendant's actions; plaintiff's injury was a self-inflicted injury thus he lacks standing to sue). Plaintiffs concede that they could have contributed unlimited amounts to a recall committee opposing the Governor but did not do so. The unequal playing field scenario created by the recall rule is thus self-generated (ECF No. 48 at PageID.461). *See McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 207 (2014) (internal quotations and citations omitted) (the First Amendment prohibits legislative attempts to fine-tune the electoral process. "it is not an acceptable governmental objective to 'level the playing field,' or to 'level electoral opportunities,' or to 'equaliz[e] the financial resources of candidates'"). Plaintiffs have, therefore, failed to demonstrate direct

---

[4] Plaintiffs have not put forward any evidence to support this statement.

individual and organizational standing and representative standing on behalf of the members of the Republican Party.  *See Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 389 (6th Cir. 2020).

The suit must be dismissed for lack of standing and subject matter jurisdiction.  *See Thompson v. Love's Travel Stops & Country Stores, Inc.*, 748 F. App'x 6, 10-11 (6th Cir. 2018)

### III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiffs' Complaint (ECF No. 1) is DISMISSED.

Dated: January 4, 2022                                           /s/ Janet T. Neff
                                                                                  JANET T. NEFF
                                                                                  United States District Judge